UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE SAMUEL NOLASCO GAITAN,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. 2:26-cv-01839-ART-EJY

ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 9)

Petitioner Jose Samuel Nolasco Gaitan has been in federal immigration custody since September 19, 2025. (ECF No. 10-3.) He filed an amended petition for a writ of habeas corpus (ECF No. 9) seeking immediate release or, in the alternative, a constitutionally adequate bond hearing. He argues that his detention is unlawful under 8 U.S.C. § 1226(a) because he did not receive a custody determination prior to being detained, his detention is unconstitutionally prolonged, and his previous bond hearing was unconstitutional because the presiding immigration judge misapplied the legal standard. (*Id.*) Because the Court agrees that Petitioner was entitled to a pre-detention custody determination, the Court grants the petition and orders Petitioner's release.

## I. BACKGROUND

Mr. Nolasco Gaitan, a 35-year-old citizen of El Salvador, arrived in the United States in 2018. (ECF No. 9 at 3.) He has three children, two of whom are United States citizens. (ECF No. 18 at 2.) His Form I-213 indicates that he pleaded guilty to two misdemeanors—assault and domestic violence in the presence of a child—in August 2025, for which he served a sentence in the Salt Lake County Metro Jail. (ECF Nos. 9 at 4; 10-3 at 3-4.) He was transferred to Immigration & Customs Enforcement ("ICE") custody on September 19, 2025. (ECF No. 10-3 at

2.) He has since been detained at the Nevada Southern Detention Center. (ECF No. 9 at 2.)

After his detention, Mr. Nolasco Gaitan requested a bond hearing as authorized by 8 C.F.R. § 1236.1. (ECF No. 10-5.) On December 31, 2025, an immigration judge denied bond based on the finding that Mr. Nolasco Gaitan is a danger to the community based on his criminal history. (*Id.*)

Mr. Nolasco Gaitan also filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture, asserting a fear of persecution should he be deported to El Salvador. (ECF No. 10-4 at 9, 112-24). On January 8, 2026, a different immigration judge denied the application and ordered Mr. Nolasco Gaitan removed. (*Id.* at 16.) He has since appealed that decision to the Board of Immigration Appeal. (ECF No. 9 at 4.)

On February 19, 2026, Mr. Nolasco Gaitan filed a habeas petition in the District of Nevada arguing that his December 2025 bond hearing was constitutionally deficient and that ICE's policy of removing noncitizens to third countries violates the Constitution and the Administrative Procedure Act. *Nolasco Gaitan v. Bondi*, No. 2:26-cv-00428-APG-EJY, ECF No. 7 (D. Nev. Mar. 12, 2026). His petition was assigned to Chief Judge Andrew P. Gordon, who granted the petition on the grounds that the immigration judge at the December 2025 bond hearing focused on Mr. Nolasco Gaitan's criminal history to deny bond and failed to consider the other relevant factors set forth in *Matter of Guerra*, 24. I & N. Dec. 37 (B.I.A. 2006). *Nolasco Gaitan v. Blanche*, No. 2:26-cv-00428-APG-EJY, 2026 WL 1265725, at *3-4 (D. Nev. May 7, 2026). The court thus ordered the government to provide Mr. Nolasco Gaitan with a new bond hearing "at which the immigration judge must consider all relevant factors in determining whether he is a danger to the community or a flight risk." *Id.* at *4.

Mr. Nolasco Gaitan's second bond hearing was held on May 14, 2026. (ECF No. 9 at 4.) The immigration judge again denied bond, this time concluding that

the government had established by clear and convincing evidence that Mr. Nolasco Gaitan was both a danger to the community and a flight risk. (ECF Nos. 10-1 at 2-3; 10-6 at 35:50-37:15.)

Mr. Nolasco Gaitan then initiated the present habeas action. (ECF No. 1.) Upon receiving the petition, the Court issued a service order instructing counsel for Respondents to produce documents necessary to resolve this case, including the I-200 Warrant for Arrest of Alien issued against Mr. Nolasco Gaitan, the Form I-286 Initial Custody Determination, and the I-862 Notice to Appear. (ECF No. 5 at 3.) Mr. Nolasco Gaitan filed an amended petition in which he argues that his detention is governed by 8 U.S.C. § 1226(a). (ECF No. 9 at 6-8.) He also raises several constitutional arguments not raised in his previous petition, including that his detention is unconstitutional because it has become arbitrarily prolonged and because he did not receive a custody determination prior to being detained. (*Id.* at 5-6, 8-9.) He also challenges the sufficiency of the May 2026 bond hearing on the grounds that the immigration judge failed to consider all relevant factors and failed to place the burden of proof on the government. (*Id.* at 9-12.)

## II. JURISDICTION

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *Hamdi*, 542 U.S. at 525 (explaining that

habeas review "remain[s] a critical check on the Executive, ensuring that it does not detain individuals except in accordance with the law"). As such, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Mr. Nolasco Gaitan argues that he has not received the procedural and substantive protections to which he is entitled under 8 U.S.C. § 1226(a) and as a *Jacobo-Ramirez* class member. He argues that (1) his detention—of almost nine months, as of the filing of the petition—has been unconstitutionally prolonged (ECF No. 9 at 5-6); (2) he was entitled to a custody determination prior to being detained and that two post-detention bond hearings cannot rectify that constitutional error (*id.* at 8-9); and (3) his May 2026 bond hearing was improper because, as with his December 2025 bond hearing, the immigration judge failed to consider the full set of *Guerra* factors and instead focused primarily on his criminal history to reach its dangerousness and flight risk findings (*id.* at 9-12). Mr. Nolasco Gaitan argues that these violations require immediate release or, alternatively, a bond hearing at which the government bears the burden of proving by clear and convincing evidence that he poses a flight risk or a danger to the community. (*Id.* at 12-13.)

Respondents counter that because Mr. Nolasco Gaitan has already received two bond hearings, he "has received more than the entitled relief" under 8 U.S.C. § 1226(a). (ECF No. 17 at 2.) They further argue that Mr. Nolasco Gaitan is incorrect regarding his claim of entitlement to both a pre-deprivation bond

hearing and a hearing at which the government must prove dangerousness and/or flight risk by clear and convincing evidence.[1] (*Id.* at 3-4.)

As a threshold matter, the parties agree that Mr. Nolasco Gaitan is detained under 8 U.S.C. § 1226(a) (ECF Nos. 9 at 6-8; 17 at 2), and Respondents do not contest Mr. Nolasco Gaitan's claim of membership in the *Jacobo-Ramirez* class. *See Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1123 (D. Nev. 2026) (defining the class). Because the Court grants Mr. Nolasco Gaitan relief on the grounds that he did not receive the pre-deprivation custody determination to which he was entitled under § 1226(a), the Court need not reach the rest of Mr. Nolasco Gaitan's arguments. *See Alves v. Blanche*, No. 2:26-cv-01853-ART-BNW, 2026 WL 3181504, at *5 (D. Nev. Oct. 23, 2026) (granting relief on the same grounds and thus declining to analyze the petitioner's remaining arguments).

**A. Mr. Nolasco Gaitan's detention without an individualized pre-deprivation determination violates procedural due process.**

The Court first evaluates Mr. Nolasco Gaitan's argument that his initial detention without an individualized pre-deprivation custody determination violated his due process. (ECF No. 9 at 8-9.) He argues that Respondents failed to produce the applicable Form I-286 by which such assessments are made and communicated to detainees. (*Id.* at 9.) Respondents argue, without citing any legal authority from this district or another, that requiring pre-deprivation bond hearings before an immigration judge would be impractical. (ECF No. 17 at 3.) But Mr. Nolasco Gaitan does not seek a pre-deprivation bond hearing before an immigration judge; his argument is that he had a due process right to a pre-deprivation individualized custody determination by an immigration official,

[1] Although Respondents initially filed a motion to dismiss the petition on exhaustion grounds (ECF No. 12), they did not restate those arguments in their response to the merits of the amended petition (ECF No. 17). The Court thus does not address them.

typically evidenced by the Form I-286, whose decision would later be reviewable by an immigration judge. (ECF No. 18 at 4.) He further argues that requiring this determination to be made *before*, not after, an individual is detained ensures that Respondents cannot engage in a practice of detaining first, then retroactively identifying justifications for such detention later. (*Id.* at 4-5.)

The Fifth Amendment imposes procedural “constraints on governmental decisions which deprive individuals of” their liberty. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1158 (D. Nev. 2025) (“Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process.”). “The fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’” *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether governmental action violates due process, courts consider three distinct factors: (1) “the private interest that will be affected by the official action”; (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and (3) “the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” *Id.* at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)). Courts apply the *Mathews* test to evaluate whether immigration detention violates due process. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (assuming without deciding that *Mathews* applies in this context).

As courts in this district have made clear, section 1226(a) and its implementing regulations guarantee noncitizens detained under the provision multiple levels of “substantial procedural protections” against the erroneous deprivation of their liberty. *See Jacobo-Ramirez*, 834 F. Supp. 3d at 1091 (quoting *Rodriguez Diaz*, 53 F.4th at 1196). “These protections include, but are not limited

to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) *at the outset of detention*, a noncitizen detained under this provision receives *an initial custody determination by the agency*; and (4) the noncitizen then has an ability to appeal said custody determination—i.e., receive a custody redetermination (bond) hearing before an immigration judge ("IJ")." *Rios-Rodriguez v. Blanche*, No. 2:26-cv-02117-RFB-MDC, 2026 WL 2280924, at *4 (D. Nev. Aug. 7, 2026) (emphasis added) (citing *Rodriguez Diaz*, 53 F.4th at 1201–02). The Court proceeds to apply the *Mathews* test to determine whether Respondents violated Mr. Nolasco Gaitan's procedural due process rights by denying him these protections—namely, a pre-deprivation custody determination made by an immigration official. *See, e.g.*, *id.* at *5-7; *Maren Marejon v. Mattos*, No. 2:26-cv-00427-GMN-BNW, 2026 WL 3026483, at *8 (D. Nev. Oct. 8, 2026).

**i. Mr. Nolasco Gaitan has a protected liberty interest.**

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]" *Mathews*, 424 U.S. at 335; *see also Rodriguez Diaz*, 53 F.4th at 1208 (considering, as part of the private liberty interest under *Mathews*, the process an immigration detainee received prior to his detention under § 1226(a)). Freedom from government detention "is the most elemental" of private interests affected by official action. *Hamdi*, 542 U.S. at 529. As this Court and others have repeatedly found in other like cases, Mr. Nolasco Gaitan has a strong liberty interest in being free from immigration detention. *See, e.g.*, *Alves*, 2026 WL 3181504, at *4; *Escobar Salgado*, 809 F. Supp. 3d at 1160; *Rodriguez Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026). His interest is only strengthened by the fact that he has been in the United States since 2018 and has three children in this country, two of whom are U.S. citizens. (ECF Nos. 9 at 3; 18 at 2.) According to his pending asylum

application, he arrived in the United States after suffering persecution in his home country of El Salvador. (ECF No. 10-4 at 112-24.) Furthermore, the Notice to Appear provided by Respondents indicates that "an asylum officer has found that [Mr. Nolasco Gaitan] has demonstrated a credible fear of persecution and torture." (ECF No. 12-1 at 2.) And while Mr. Nolasco Gaitan pleaded guilty in 2025 to assault and domestic violence offenses, the record indicates that he was detained after serving his sentence for those offenses; immigration detention is not intended to serve as an extension of criminal punishment. *See Zadvydas*, 533 U.S. at 690 (differentiating between criminal detention and immigration detention, which is justified in "narrow" and "nonpunitive circumstances").

Accordingly, the first *Mathews* factor weighs in favor of Mr. Nolasco Gaitan based on his strong private interest in being free from immigration detention.

**ii. The risk of erroneous deprivation is high.**

The second *Mathews* factor requires considering "the risk of an erroneous deprivation of [Mr. Nolasco Gaitan's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. As stated above, section 1226(a) guarantees numerous procedural safeguards that protect against the erroneous deprivation of liberty by providing "numerous levels of review, each offering [immigration detainees] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210. These procedures ensure that noncitizens have notice of the statutory and factual basis of their detention, an opportunity to be heard regarding that basis, and an opportunity to appeal any adverse determination. *See* 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1; 1003.15(b)(1); 236.1(b); 236.1(c)(8), (g); *Rodriguez Diaz*, 53 F.4th at 1197. The Court finds that the risk of erroneous deprivation is high where, like here, a petitioner is detained without an individualized pre-deprivation custody determination.

In particular, the Form I-286 is intended to provide a noncitizen with individualized notice of the basis of their detention. *Id.* at 1196; *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). This serves an important role in the multi-level immigration detention review process, wherein immigration judges are delegated the authority to hear "appeals" from custody determinations under the regulations. *See Maren Marejon*, 2026 WL 3026483, at *6 (citing *Rios-Rodriguez*, 2026 WL 2280924, at *7); *see also* 8 C.F.R. § 236.1(d) (delegating authority to immigration judges to hear "[a]ppeals from custody decisions" upon application by the detainee "[a]fter an initial custody determination" by a designated officer). Because the noncitizen typically bears the burden of proof at their redetermination hearing, knowing, at minimum, the legal and factual bases underlying the original custody determination ensures a fair and legitimate opportunity to disprove and rebut the government's arguments. *Maren Marejon*, 2026 WL 3026483, at *6; *Rios-Rodriguez*, 2026 WL 2280924, at *7. Without the pre-deprivation notice preceding the hearing before the immigration judge, the risk of erroneous deprivation is high. *Alves*, 2026 WL 3181504, at *5; *Maren Marejon*, 2026 WL 3026483, at *6 (citing *Rodriguez Diaz*, 53 F.4th at 1210) (explaining how, "operating together," the pre-deprivation procedures and custody redetermination hearing "ensure that the risk of an erroneous deprivation would be relatively small").

In this case, the Court, through its service order, ordered Respondents to produce, among other documents, the Form I-286 provided to Mr. Nolasco Gaitan at the time of his detention. (ECF No. 5 at 3.) The only document Respondents provided to the Court was Mr. Nolasco Gaitan's Notice to Appear, attached to their motion to dismiss the amended petition. (ECF No. 12-1.) Mr. Nolasco Gaitan

attached several documents to his amended petition, such as the I-200 Warrant for Arrest (ECF No. 10-2), but the Form I-286 was not one of them. According to Mr. Nolasco Gaitan, Respondents never produced that document (ECF No. 9 at 9), and the record does not show otherwise. The Court thus finds that Petitioner was not afforded this "key procedure[]" prior to being detained. *Rios-Rodriguez*, 2026 WL 2280924, at *4; *Garcia v. Mattos*, 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *8 (D. Nev. July 8, 2026) (finding that the government's failure to produce evidence of an individualized pre-deprivation custody determination "is a concession that he was not afforded th[at] procedure[]").

The Court thus concludes that the risk of erroneous deprivation from being denied a pre-deprivation custody determination by ICE is substantial, and this factor weighs in favor of Mr. Nolasco Gaitan.

**iii. The government interest in civil detention without a pre-deprivation custody determination is low.**

The third *Mathews* factor is the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The government's interest in enforcing immigration laws, while considerable, is served by the present statutory scheme under section 1226(a) and does not outweigh Mr. Nolasco Gaitan's interest in receiving the full constitutional due process to which he is entitled prior to being detained. To be sure, the government has a recognized interest in "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal." *Rodriguez Diaz*, 53 F.4th at 1208. But those interests are served, not undermined, by the procedural protections afforded under section 1226(a)—including requiring a pre-deprivation custody determination, which ensures that noncitizens are not arbitrarily detained unless an individualized determination has been made that they pose a danger or flight risk. *See Maren Morejon*, at *7; *Jacobo Ramirez,* 834 F. Supp. 3d

at 1119). And Respondents' interest in violating constitutional requirements by *not* affording individuals the due process they are owed is low. *See Rios-Rodriguez*, 2026 WL 2280924, at *7 (finding the government's practice of detaining people under § 1226(a) without the required Form I-286s "troubling" and unjustified); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). The Court thus finds that the third *Mathews* factor also weighs in Mr. Nolasco Gaitan's favor.

For the foregoing reasons, the Court finds that all three *Mathews* factors weigh in favor of Mr. Nolasco Gaitan. He was entitled to an individualized pre-deprivation custody determination. He did not receive one. His continued detention without the pre-deprivation process required under § 1226(a) thus violates due process and is unconstitutional. And while Mr. Nolasco Gaitan did receive bond hearings after he was already detained, brushing aside the initial constitutional violation on the grounds that mandatory procedure was eventually afforded "'would effectively allow [Respondents] to transform an unlawful detention into a lawful one through *post-hoc* justifications'" and thus would not adequately remedy the constitutional harm. *Melendez Paz v. Mullin*, No. 2:26-cv-00296-RFB-MDC, 2026 WL 1194944, at *7 (D. Nev. May 1, 2026) (quoting *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 563-64 (D.N.J. 2026)).

**B. Mr. Nolasco Gaitan's detention without an individualized pre-deprivation determination also violates substantive due process.**

Alongside the procedural due process protections discussed above, substantive due process protects individuals from government interference with fundamental rights. *See Regino v. Staley*, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if

'the infringement is narrowly tailored to serve a compelling interest.'" *Id.* at 960 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Substantive due process thus protects noncitizens from arbitrary confinement by the government, which violates a noncitizen's substantive due process rights except in certain 'special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Escobar Salgado*, 809 F. Supp. 3d at 1158 (quoting *Zadvydas* at 690) (citation modified).

As discussed above, Respondents detained Mr. Nolasco Gaitan without first providing an individualized custody determination. While Respondents did produce Mr. Nolasco Gaitan's Notice to Appear (ECF No. 12-1), that document states only basic facts about his immigration history consistent with his undisputed *Jacobo-Ramirez* class membership, such as that he is a citizen of El Salvador without valid documentation who was not admitted or paroled into the United States after inspection. *See Jacobo-Ramirez*, 834 F. Supp. 3d at 1123. The Notice to Appear does not articulate any basis for depriving Mr. Nolasco Gaitan of his freedom or immediately detaining him without affording him the required due process. The Court thus concludes that his detention, in addition to violating procedural due process, from the outset violated substantive due process as well. *See, e.g.*, *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1149 (D. Nev. 2025) (finding that a regulation permitting unilateral government detention of noncitizens without individualized process requiring special justification violated substantive due process); *Escobar Salgado*, 809 F. Supp. 3d at 1162 (finding a substantive due process violation in similar circumstances); *Rios-Rodriguez*, 2026 WL 2280924, at *9 (same).

**C. The appropriate remedy is immediate release.**

Having established a constitutional violation, the Court next must determine what relief must be afforded. Courts have found that immediate release is an appropriate remedy where a petitioner was denied a pre-deprivation hearing despite receiving a post-deprivation custody redetermination hearing before an immigration judge. *See Alves*, 2026 WL 3181504, at *6-7 (ordering release where no Form I-286 or pre-deprivation hearing was provided); *Garcia*, 2026 WL 1972386, at *6 (finding release appropriate remedy when petitioner was denied the pre-deprivation process afforded under § 1226(a), despite a post-deprivation bond hearing); *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.,* 2:26-cv-02548-JHC, 2026 WL 2686824 (W.D. Wash. Sept 14, 2026) (same); *Rodriguez Rodriguez*, 2026 WL 2641448, at *3 (same). Accordingly, the Court finds that Mr. Nolasco Gaitan's immediate release is the appropriate remedy.

Courts in this district have also found it necessary to adopt additional equitable remedies to ensure that Respondents provide due process moving forward. *See, e.g., Jimenez Gomez v. Dep't of Homeland Sec.*, No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2 (D. Nev. Apr. 29, 2026) (collecting examples showing "[a]dmonishment is necessary because Respondents are repeatedly—and increasingly—violating this Court's orders")*; Rios-Rodriguez,* 2026 WL 2280924, at *11 n. 11 (same); *Maren Marejon*, 2026 WL 3026483, at *8 (same); *see also Torres v. Blanche*, No. 5:26-cv-04209-KS, 2026 WL 2828638, at *6 (C.D. Cal. Sept. 21, 2026) (ordering similar equitable relief outside this district). Under the Court's broad and flexible power to fashion equitable relief in habeas cases, *see Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), it finds it justified to require that, in the event Respondents seek to re-detain Mr. Nolasco Gaitan under § 1226(a), they must provide him with a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that the detainee presents a flight risk or a danger to the community such that detention

is warranted. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (affirming a district court's remedy under the Due Process Clause requiring the government to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community"); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025) (describing *Martinez*). While the Court does not take this step lightly, it finds it is necessary due to Respondents' violations of the law and petitioners' rights in this case and others to date.

**IV. CONCLUSION**

It is therefore ORDERED that Petitioner's writ of habeas corpus (ECF No. 9) is GRANTED.

It is further ORDERED that Respondents must RELEASE Petitioner from detention ON PERSONAL RECOGNIZANCE on October 29, 2026, between 10am and 2pm. Counsel for Petitioner (or their designee/agent) will be permitted to wait in the public areas of the detention center during the release window.

It is further ORDERED that Respondents are PROHIBITED from imposing release conditions that substantially interfere with Petitioner's liberty, such as re-detention, electronic ankle monitoring, or enrollment in ISAP and ATD programs, without having established the reasonableness of those restrictions by clear and convincing evidence at a pre-deprivation hearing.

It is further ORDERED that Respondents must ensure that Petitioner's personal property has been returned.

It is further ORDERED that the parties shall file a joint notice of compliance with this order by October 30, 2026.

Dated this 27th day of October 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE